UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MOBILE LIFESTYLES, INC., a Florida corporation,
JOSEPH SANTILLI, an individual, and JONATHAN
SLAGER, an individual,

                          Plaintiffs,

        -against-

MOBILE ENTERTAINMENT, INC., a Delaware
corporation; LAVALIFE, INC. a Delaware corporation,

                       Defendants.

----------------------------------------------------------------X

**NOTICE OF MOTION FOR
ADMISSION PRO HAC VICE**

08-cv-01559 (RWS)(DF)

      PLEASE TAKE NOTICE that, upon the annexed affidavit of Homer B. Ramsey, Esq.

sworn to the 23rd day of April, 2008, with exhibits; the annexed affidavit of Bryon J. Benevento,

Esq.; and upon all the pleadings and proceedings heretofore had herein, the undersigned will

move this Court before the Honorable Robert W. Sweet, at the Courthouse located at 500 Pearl

Street, New York, New York, on the 7th day of May, 2008 at 12:00 o'clock noon of that day, or

as soon thereafter as counsel can be heard, for an Order, pursuant to Local Civil Rule 1.3(c) of

the United States Courts for the Southern and Eastern Districts of New York, permitting Bryon J.

Benevento, Esq. to appear in this action *pro hac vice* for the purpose of acting as co-counsel with

Herzfeld & Rubin, P.C. for Plaintiffs Mobile Lifestyles, Inc., Joseph Santilli and Jonathan

Slager, in discovery proceedings and trial; together with such other and further relief as the Court

may deem just and proper.

Dated:  New York, New York
       April 23, 2008

                            HERZFELD & RUBIN, P.C.

                            _____
                            Homer B. Ramsey (HR9760)
                            Attorney for Plaintiffs
                            40 Wall Street
                            New York, NY 10005
                            Phone: (212) 471-8500
                            Fax: (212) 344-3333

To:    Robert A. Horowitz, Esq.
       GREENBERG TRAURIG, LLP
       200 Park Avenue
       New York, New York 10166

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

MOBILE LIFESTYLES, INC., a Florida corporation,
JOSEPH SANTILLI, an individual, and JONATHAN
SLAGER, an individual,

**AFFIDAVIT IN SUPPORT OF
MOTION**

Plaintiffs,

-against-

08-cv-01559 (RWS)(DF)

MOBILE ENTERTAINMENT, INC., a Delaware
corporation; LAVALIFE, INC. a Delaware corporation,

Defendants.

----------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

HOMER B. RAMSEY, being duly sworn, deposes and says:

1.      I am a member of the law firm of Herzfeld & Rubin, P.C., attorneys for plaintiffs

Mobile Lifestyles, Inc., Joseph Santilli and Jonathan Slager ("Plaintiffs"). I am fully familiar

with the facts set forth herein.

2.      I submit this affidavit in support of Plaintiffs' motion for an order, pursuant to

Local Civil Rule 1.3(c) of the United States District Courts for the Southern and Eastern Districts

of New York, permitting Bryon J. Benevento ("Mr. Benevento") to appear in this action pro hac

vice for the purpose of acting as co-counsel with Herzfeld & Rubin, P.C. for Plaintiffs in

discovery proceedings and trial.

3.      Mr. Benevento is an attorney duly admitted in the bar of the State of Utah, and the

United States District Court for the District of Utah. Annexed hereto collectively as Exhibit "A"

are Certificates of Good Standing issued by the Clerks of those Courts, certifying that Mr.

Benevento is in active status and has not been disciplined by any of those Courts. Annexed hereto as Exhibit "B" is the Affidavit in Support of Mr. Benevento.

4.      There are no pending disciplinary proceedings against Mr. Benevento in any State or Federal court.

5.      Mr. Benevento is a principal of the law firm of Snell & Wilmer LLP in Salt Lake City, Utah.

6.      This is a lawsuit involving breach of an Asset Purchase Agreement wherein the Plaintiffs, as sellers, contend that the Defendants, as buyers, have failed to pay the Plaintiffs monies due under the Asset Purchase Agreement. A copy of Plaintiffs' complaint is annexed hereto as Exhibit "C." The Defendants have not yet answered the complaint.

7.      Mr. Benevento has acted as counsel for Plaintiffs in other matters, and Plaintiffs have requested that Mr. Benevento be designated to participate as co-counsel in the discovery proceedings and trial of this action together with Herzfeld & Rubin, P.C., which will continue to act as counsel of record for Plaintiffs in this action in accordance with the rules of this Court.

8.      Local Civil Rule 1.3 of the United States District Courts for the Southern and Eastern District of New York sets forth, in pertinent part:

> (c) A member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try a particular case in whole or in part as counsel or advocate, upon motion and upon filing with the Clerk of the District Court a certificate of the court for each of the states in which the applicant is a member of the bar, which has been issued within a thirty (30) days and states that the applicant is a member in good standing of the bar of that state court. Only an attorney who has been so admitted or which is member of the bar of this court may enter appearance for parties, sign stipulations or receive payments upon judgments, decrees or orders.

9.      Accordingly, it is respectfully requested that the Court permit Bryon J. Benevento, Esq. to appear in this action *pro hac vice* for the purpose of acting as co-counsel with

Herzfeld & Rubin, P.C. for Plaintiffs in discovery proceedings and trial.  A proposed Order is annexed hereto as Exhibit "D".

   WHEREFORE, it is respectfully requested that Plaintiffs' motion be granted in its entirety; together with such other and further relief as the Court may deem just and proper.

            _____
            Homer B. Ramsey (HR9760)

Sworn before me this
23rd day of April, 2008.

_____
Notary Public

MARION CICERO Bacot
Notary Public, State of New York
No. 01CI4780506
Qualified in Bronx County
Commission Expires July 31, 2009

3

<u>AFFIDAVIT OF SERVICE BY MAIL</u>

STATE OF NEW YORK    )
                     )SS.:
COUNTY OF NEW YORK   )

      SARA GUTMAN, being duly sworn, deposes and says:  I am not a party to the action, am over 18 years of age and reside in Brooklyn, New York.

      On April 23, 2008, I served the within

**NOTICE OF MOTION WITH SUPPORTING AFFIDAVIT AND EXHIBITS**

by depositing a true copy thereof enclosed in a post-paid envelope, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, to the following persons at the last known address set forth below:

To:    Robert A. Horowitz, Esq.
       GREENBERG TRAURIG, LLP
       200 Park Avenue
       New York, New York 10166

                                       *Sara Gutman*
                                    SARA GUTMAN

Sworn to before me this
23rd day of April, 2008

*Marion Bacot*
Notary Public

MARION ~~CICERO~~ *Bacot*
Notary Public, State of New York
No. 01CI4790506
Qualified in Bronx County
Commission Expires July 31, ~~2009~~ *2015*

Exhibit A

AO 136

CERTIFICATE OF GOOD STANDING

# United States of America

District of Utah

I, D. Mark Jones,  Clerk of the United States District Court,  District of Utah,

DO HEREBY CERTIFY That

## Bryon J. Benevento

was duly admitted to practice in said Court on October 4, 1988, and is in good standing as a member of the bar of said Court.

Dated at Salt Lake City, Utah

on April 22, 2008

D. Mark Jones
*Clerk*

By Deputy Clerk



# Utah State Bar

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077 • Fax: 801-531-0660

John C. Baldwin
Executive Director

April 18, 2008

To Whom It May Concern:

This is to certify that **Bryon J. Benevento**, Utah State Bar **No. 05254**, was admitted to practice law in Utah on **October 4, 1988** and is an active member of the Utah State Bar in good standing. "Good standing" is defined as a lawyer who is current in the payment of all Bar licensing fees, has met mandatory continuing legal education requirements, if applicable, and is not disbarred, presently on probation, suspended, or has not resigned with discipline pending, from the practice of law in this state.

No public disciplinary action involving professional misconduct has been taken against the license of **Bryon J. Benevento** to practice law.



Katherine A. Fox
General Counsel
Utah State Bar

**Board of Commissioners**
V. Lowry Snow
President
Nathan Alder
President-Elect
Steven R. Burt, AIA
Christian W. Clinger
Yvette D. Diaz
Mary Kay Griffin, CPA
Robert L. Jeffs
Curtis M. Jensen
Felshaw King
Lori W. Nelson
Herm Olsen
Stephen W. Owens
Scott R. Sabey
Rodney G. Snow



# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MOBILE LIFESTYLES, INC., a Florida corporation,
JOSEPH SANTILLI, an individual, and JONATHAN
SLAGER, an individual,

                                    Plaintiffs,

           -against-

MOBILE ENTERTAINMENT, INC., a Delaware
corporation; LAVALIFE, INC. a Delaware corporation,

                                 Defendants.

--------------------------------------------------------------X

**AFFIDAVIT OF BRYON J. BENEVENTO, ESQ. IN SUPPORT OF MOTION TO ADMIT COUNSEL PRO HAC VICE**

08-cv-01559(RWS) (DF)

STATE OF UTAH       )
                    ) ss.:
COUNTY OF UTAH   )

        BRYON J. BENEVENTO, being duly sworn, deposes and says as follows:

1.      I am a principal with the law firm of Snell & Wilmer L.L.P.

2.      I submit this affidavit in support of my motion for admission to practice *pro hac vice* in the above captioned matter.

3.      As shown in the Certificates of Good Standing annexed hereto, I am a member in good standing of the Bar of the State of Utah, and the United States District Court for Utah.

4.      There are no pending disciplinary proceedings against me in any State or Federal court.

5.      Wherefore your affiant respectfully submits that he is permitted to appear as counsel and advocate *pro hac vice* in this one case.

                                      _____
                                      Bryon J. Benevento, Esq.

Sworn before me this
23rd day of April, 2008.

_____
Notary Public

NOTARY PUBLIC
KIM R. EDLIN
15 W So. Temple, Ste. 1200
Salt Lake City, Utah 84101
My Commission Expires
May 17, 2008
STATE OF UTAH

Exhibit C



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOBILE LIFESTYLES, INC., a Florida
corporation, JOSEPH SANTILLI, an
individual, and JONATHAN SLAGER, an
individual,

             Plaintiffs,

vs.

MOBILE ENTERTAINMENT, INC. a
Delaware corporation; LAVALIFE, INC. a
Delaware corporation.

             Defendants.

**COMPLAINT**

**AND**

**JURY DEMAND**

**08 CV 1559**

Case No.: _____

Honorable _____

FEB 14 2008

Plaintiffs Mobile Lifestyles, Inc. ("**Mobile Lifestyles**"), Joseph Santilli ("**Santilli**") and

Jonathan Slager ("**Slager**"), (collectively "**Plaintiffs**") through their attorneys, Herzfeld &

Rubin, P.C., complain against Defendants Mobile Entertainment, Inc. ("**MEI**") and Lavalife, Inc.

("**Lavalife**") and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Mobile Lifestyles is a Florida corporation with its principal place of

business in the State of Florida.

2.    Plaintiff Santilli is a resident of the State of Florida.  Mr. Santilli is a former

shareholder in Mobile Lifestyles.

3.    Plaintiff Slager is a resident of the State of Utah.  Mr. Slager is a former

shareholder in Mobile Lifestyles.

4.    Defendant MEI is a Delaware corporation, with its principal place of business in

the Toronto, Canada.

5. Defendant Lavalife is a Delaware corporation, with its principal place of business in the Toronto, Canada.

6. MEI is a wholly owned subsidiary of Lavalife.

7. Lavalife is a wholly owned subsidiary of Vertrue, Inc.

8. The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

9. This Court has original jurisdiction over this matter by reason of diversity of citizenship pursuant to 28 U.S.C. § 1332.

10. Venue is proper in this Court under 28 U.S.C. § 1391.

11. The parties have consented to the jurisdiction of this Court pursuant to Paragraph 8.9 of the Asset Purchase Agreement, the Defendant's breach of which forms the basis of this Complaint. Paragraph 8.9 of the Asset Purchase Agreement provides:

> Any legal action or proceeding filed by any seller with respect to this Agreement or any Ancillary Agreement shall be brought in state courts located in the City of New York or of the United States of America for the Southern District of New York.

### GENERAL ALLEGATIONS
#### (Allegations Common to Each Claim for Relief)

12. MEI desired to purchase the business and assets held by Mobile Lifestyles (hereinafter referred to as the "Business").

13. On July 28, 2006, the parties entered into the following agreements:

    A) an Asset Purchase Agreement by and among Mobile Lifestyles , Inc. ("**Seller**"), Mobile Entertainment, Inc. ("**Buyer**"), Joseph Santilli ("**Santilli**") and Jonathan Slager ("**Slager**");

    B) an Asset Purchase Agreement by and among Joseph Santilli , Jonathan Slager ("**Sellers**") and Mobile Entertainment, Inc. ("**Buyer**"); and

    C) an Escrow Agreement by and among Mobile Lifestyles, Inc. ("**Seller**"), Mobile Entertainment, Inc. ("**Buyer**") and LaSalle Bank National Association (The "**Escrow Agent**").

Copies of the Agreements identified above are attached hereto as Exhibits A, B, and C, respectively.

14. The Asset Purchase Agreements and Escrow Agreement were in effect at all times relevant to this action.

15. The Asset Purchase Agreements provide that, subject to any adjustments and set-offs provided for therein, MEI shall pay to Santilli and Slager for the acquired assets an initial payment of $3,600,000, **plus the Contingent Consideration Payments** calculated in accordance with section 3.2. See Exhibit A, Asset Purchase Agreement § 3.1 (emphasis added).

16. The Asset Purchase Agreement obligates MEI to pay additional consideration to Santilli and Slager in the form of Contingent Consideration Payments. These additional payments were to be made within 30 days after the conclusion of each of the four quarterly periods immediately following the closing date, with the first quarter beginning on August 1, 2006. Each Contingent Consideration Payment was to be a percentage of the Net Revenue generated by MEI during the applicable quarterly period. The percentage of MEI's Net Revenue was to be determined by reference to the chart below:

| Quarterly Net Revenue | $0 — $2,250,000 | Above $2,250,000 |
|---|---|---|
| Net Revenue Payout Factor | 0% | 20% |

Id. § 3.2.

17. Net Revenue is defined as:

> [f]or any period, means the total revenue generated from the Business by Buyer in such period, (i) minus actual chargebacks and refunds charged by Buyer during such period arising from the settlement by the aggregator of post-closing revenue (ii) plus any actual credits received by Buyer during such period, all determined in accordance with GAAP; provided, however, that in determining Net Revenue for the computation of the fourth quarter Contingent Consideration Payment, if any, an amount equal to the product of

3

(A) the Chargeback Percentage multiplied by (B) the fourth quarter
total revenue, shall be deducted from the total revenue.

Id. § 1.1.

18.     The parties agreed that "the aggregate amount of the Contingent Consideration
Payments shall not . . . exceed $7,000,000 . . . ." Id. § 3.2(b)

19.     MEI was required to use its best efforts to promote, market and "conduct the
Business in order to maximize the Net Revenues, so as to generate the highest possible
Contingent Consideration Payments for Sellers." Id. §§ 6.8 and 6.10.

20.     Prior to agreeing to sell the Business to MEI, Plaintiffs communicated to
Defendant the importance of receiving the Contingent Consideration Payments.

21.     To date, MEI has made only one Contingent Consideration Payment to Plaintiffs,
in an amount far less than the expected consideration.

22.     On information and belief, MEI has failed to use its best efforts to promote,
market or conduct the Business in order to maximize the Net Revenues, so as to generate the
highest possible Contingent Consideration Payments for Plaintiffs.

23.     On information and belief, in an attempt to avoid paying Plaintiffs the Contingent
Consideration Payments which would otherwise be owed, MEI has 1) diverted customers of the
Business to other businesses owned and/or operated by MEI, including, but not necessarily
limited to, Vertrue, Inc. and Lavalife; 2) diverted business opportunities and product lines to
other businesses owned and/or operated by MEI, including, but not necessarily limited to,
Vertrue, Inc. and Lavalife; 3) in concert with Defendant Lavalife, deliberately engaged in
fraudulent and improper billing practices, including, but not necessarily limited to duplicate
billing of identical cell phone numbers through two different payment aggregators; and 4) failed

4

to diversify the Business's product lines by not investing money and resources into promoting text messaging products.

24. On information and belief, MEI has also under-reported its Net Revenues in an effort to avoid its obligation to make Contingent Consideration Payments to Plaintiffs.

25. Pursuant to the Agreements between the Parties, MEI was required to withhold $550,000 ("**Escrow Funds**") from the purchase price and deposit these funds in an escrow account, which was to be held, administered and distributed in accordance with the terms of the Escrow Agreement. §§ 3.1, 3.3, 3.4(b)(ii). A true and correct copy of the Escrow Agreement is attached hereto as Exhibit C.

26. The Escrow Agreement was executed at Closing on July 28, 2006 and established a fund for claims of indemnification based on the warranties provided in Section 7 of the Asset Purchase Agreement. § 1.1.

27. Section 7.2 of the Asset Purchase Agreement requires that, for a period of eighteen months from Closing, and subject to specified limitations, Sellers would indemnify MEI for claims arising out of the following conduct:

> (i) any untrue representation, or breach of warranty by a Seller or the Company contained herein or in any certificate, agreement, document or instrument delivered to Buyer by any Seller or the Company other than the Consulting Agreement;
>
> (ii) any breach of any covenant or agreement of Seller or the Company contained herein or in any Ancillary Agreement or any other agreement delivered to Buyer by any Seller or the Company other than the Consulting Agreement;
>
> (iii) any claim by or a claim arising from any action, or inaction, of any Person that was an Affiliate of any Seller or the Company at any time prior to the Closing;
>
> (iv) (A) any and all Liabilities arising out of (i) the ownership or operation of the Acquired Assets prior to the Closing and (B) any and all pre-Closing Liabilities related to any asset transferred to Buyer by the Company;

(v)     any claim for finder's fee or brokerage or other commission arising by reason of any services alleged to have been rendered to or at the instance of any Seller or the Company with respect to this Agreement, the transactions contemplated by this Agreement and the Ancillary Agreements or any other agreement between the Company and Buyer; and

(vi)     any Third Party Claims against Buyer Indemnified Persons for Intellectual Property infringement by any Seller, or the Company, to the extent that such infringement occurred prior to the Closing, but expressly excluding any claims of infringement occurring after the Closing.  Even is such infringement is a continuation of infringement of Sellers or the Company occurring prior to the Closing, Buyer is responsible for that proportion of Damages that relate to infringement occurring after the Closing.  It is understood and agreed that subsections (i) (other than with respect to Section 4.7(l)) to (v) above do not apply to infringement of Intellectual Property and that this subsection (vi) is the only subsection of this Section 7.2 (other than with respect to Section 4.7(l)) that applies to the infringement of Intellectual Property and that this represents the only obligation and liability of Sellers to Buyer and other Buyer Indemnified Persons with respect to the infringement of Intellectual Property or claims of such infringement.

28.     The Escrow Funds were scheduled to be released to Plaintiffs on January 28, 2008.

29.     However, on January 25, 2008, a mere three days before the scheduled release of the Escrow Funds, MEI notified Plaintiffs and the Escrow Agent that, on December 21, 2007, MEI had received notice of potential indemnity claims from VeriSign, Inc. related to a Mobile Gateway Agreement dated April 1, 2006.  A true and correct copy of the Notice of Potential Indemnity Claims is attached hereto as Exhibit D.

30.     On January 28, 2008, Plaintiffs notified MEI that the potential indemnity claims referenced by VeriSign were unrelated to the representations and warranties contained in the Asset Purchase Agreements and do not provide a basis for MEI to prevent the distribution of the

Escrow Funds to Plaintiffs. A true and correct copy of the January 28, 2008 correspondence from Plaintiffs' counsel to R. Duke, CFO and Secretary for MEI, is attached hereto as Exhibit E.

31. On January 30, 2008, Plaintiffs formally requested that the Escrow Agent release the Escrow Funds pursuant to § 3.1(b) of the Escrow Agreement. A true and correct copy of the January 30, 2008 Singular Disbursement Request is attached hereto as Exhibit F.

32. On January 31, 2008, the Escrow Agent refused to release the funds and informed the parties that "it will take no action until it receives joint written instructions from the parties or an order, per section 3.1(iii) of the Escrow Agreement." A true and correct copy of the January 31, 2008 correspondence from M. LoIaocono is attached hereto as Exhibit G.

33. The Escrow Agreement contains an arbitration clause requiring that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach hereof shall be settled by arbitration in accordance with commercial rules of the American Arbitration Association ("AAA")." Escrow Agreement §15.1

34. Accordingly, on February 4, 2008, Plaintiffs filed a demand for arbitration, seeking the release of the Escrow Funds.

35. MEI's refusal to release the Escrow Funds to Plaintiffs constitutes a breach of its obligations under the Asset Purchase Agreements and Escrow Agreement.

36. Section 6.1 of the Asset Purchase Agreements provides that, for a period of three years following the Closing, Plaintiffs will not compete with MEI or any business conducted by Lavalife, Inc.

37. Section 6.2 of the Asset Purchase Agreement provides that, for a period of three years following the Closing, Plaintiffs will not solicit, interfere with, induce or contact MEI's customers.

38. However, both the covenant not to compete and the non-solicitation provisions contained in the Asset Purchase Agreements are contingent upon MEI not being in breach of any

7

material terms of the Asset Purchase Agreements or the Escrow Agreement. Asset Purchase
Agreement §§ 6.1 and 6.2.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Defendant MEI)

39.     The Plaintiffs hereby re-allege the facts set forth in each paragraph above.

40.     The Plaintiffs have performed all requirements of them under the Asset Purchase
Agreements.

41.     MEI has breached the terms of the Asset Purchase Agreements, without
limitation, in the following respects: (a) failing to use its best efforts to promote, market or
conduct the Business in order to maximize the Net Revenues, so as to generate the highest
possible Contingent Consideration Payments for Plaintiffs; (b) under-reporting its Net Revenues
in an effort to avoid its obligation to make Contingent Consideration Payments to Plaintiffs; (c)
converting assets of the Business to inure to the benefit of Vertrue, Inc. and Lavalife to the
detriment of Plaintiffs; d) engaging in improper and/or fraudulent billing practices; and e)
withholding consent to release the Escrow Funds to Plaintiffs.

42.     The Plaintiffs repeatedly reminded MEI of its contractual obligations and duties
pursuant to the Asset Purchase Agreements and Escrow Agreement, but MEI failed to perform as
required under the Agreements.

43.     MEI's actions constitute material breach of the terms of the Asset Purchase
Agreements and Escrow Agreements, and Plaintiffs are entitled to damages, in an amount that
will be proven at trial, but not less than $7,000,000 together with pre- and post-judgment interest,
plus costs and attorneys fees.

## SECOND CLAIM FOR RELIEF
### (Interference with Contract against Defendant Lavalife)

44.     Plaintiffs hereby re-allege the facts set forth in each paragraph above.

45.     At the time of Lavalife's improper conduct, Plaintiffs were parties to valid contracts with MEI.

46.     When Lavalife engaged in fraudulent billing practices and improperly accepted assets of the Business which MEI had purchased from Plaintiffs, Lavalife knew of the existence of the Asset Purchase Agreements between Plaintiffs and MEI.

47.     Lavalife intentionally engaged in improper billing practices and knowingly accepted assets of the Business which MEI purchased from Plaintiffs.

48.     As a result of Lavalife's conduct, MEI was induced to breach its contracts with Plaintiffs.

49.     As a result of Lavalife's conduct, MEI was induced to divert monies to Lavalife in order to avoid making the Contingent Consideration Payments called for by the Asset Purchase Agreements.

50.     As a result of Lavalife's conduct, Plaintiffs have been damaged, in an amount that will be proven at trial, but not less than $7,000,000, together with pre- and post-judgment interest, plus costs and attorneys fees.

### THIRD CLAIM FOR RELIEF
**(Declaratory Judgment)**

51.     Plaintiffs hereby re-allege the facts set forth in each paragraph above.

52.     Plaintiffs have filed a demand for arbitration, seeking the release of the Escrow Funds and monetary damages based on the Defendant MEI's alleged breach of duties owed to Plaintiffs.

53.     Should the arbitrator find that Defendant wrongfully withheld the release of the Escrow Funds, Defendant will have breached their obligations under the Asset Purchase Agreements and Escrow Agreement.

54.     An actual controversy has arisen and now exists between the Plaintiffs and
Defendant concerning: (1) what duties were owed by Defendant to Plaintiffs under the Asset
Purchase Agreements and Escrow Agreement; and (2) whether Defendant breached any duties
owed to Plaintiffs.  The Plaintiffs seek a judicial declaration to resolve these issues.

55.     MEI breached its duty, contractual or otherwise, to Plaintiffs related to the Asset
Purchase Agreements and Escrow Agreements, as MEI failed to fully perform all of its duties
and obligations under the Asset Purchase Agreements and Escrow Agreement.

56.     Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57,
Plaintiffs are entitled to Judgment against MEI declaring:  1) MEI's refusal to release the Escrow
Funds constitutes a breach of its duties under the Asset Purchase Agreements and Escrow
Agreement; 2) MEI, having been found to be in breach of its duties, under the Asset Purchase
Agreements and Escrow Agreement, can not enforce the covenants not to compete and non-
solicitation provisions; 3) as of the date of MEI's breach, which was January 25, 2008, Plaintiffs
were and remain free to compete with MEI and solicit MEI's customers; 4) Sections 3.1, 3.2, 6.8
and 6.10 of the Asset Purchase Agreement requires MEI to pay Plaintiffs an amount to be proven
at trial, but not less than $7,000,000, plus pre- and post-judgment interest at the respective
contractual and statutory rate, plus costs and attorneys' fees incurred in litigating this dispute,
plus its reasonable costs and attorneys' fees incurred in collecting these amounts, as subsequently
established by affidavit, together which any further relief as this Court deems just and proper in
the circumstances.

### FOURTH CLAIM FOR RELIEF
**(Request for Accounting)**

57.     The Plaintiffs hereby re-allege the facts set forth in each paragraph above.

58. The Plaintiffs have brought this case against Defendants, seeking monetary damages based, inter alia, on Defendant MEI's alleged breach of duties owed to Plaintiffs pursuant to the Asset Purchase Agreements and Defendant Lavalife's interference with contract.

59. One of the bases of Plaintiffs' claims is that Defendant MEI has under-reported its Net Revenues in an effort to avoid its obligation to make Contingent Consideration Payments to Plaintiffs.

60. Another basis of Plaintiffs' claims is that Defendant Lavalife has engaged in improper and/or fraudulent billing practices.

61. Defendants are presently in control of all of the financial statements, sales records, and other documentation for the Business which reflect the Net Revenue and past billing practices.

62. Plaintiffs are entitled to an independent accounting of the Business, through which the Net Revenue and past billing practices can be properly determined.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Plaintiffs pray for judgment in their favor and against Defendants as follows:

1. As to their First Claim for Relief, for damages in the amount to be proven at trial, but not less than $7,000,000 plus pre- and post-judgment interest at the respective contractual and statutory rate, plus costs and attorneys' fees incurred in litigating this dispute, plus its reasonable costs and attorneys' fees incurred in collecting these amounts, as subsequently established by affidavit, together which any further relief as this Court deems just and proper in the circumstances.

2. As to their Second Claim for Relief, for damages in the amount to be proven at trial, but not less than $7,000,000 plus pre- and post-judgment interest at the respective contractual and statutory rate, plus costs and attorneys' fees incurred in litigating this dispute,

plus its reasonable costs and attorneys' fees incurred in collecting these amounts, as subsequently established by affidavit, together which any further relief as this Court deems just and proper in the circumstances.

3.     As to their Third Claim for Relief, for a declaratory judgment that 1) Defendant's refusal to release the Escrow Funds constitutes a breach of its duties under the Asset Purchase Agreements and Escrow Agreement; 2) Defendant, having been found to be in breach of its duties, under the Asset Purchase Agreements and Escrow Agreement, can not enforce the covenants not to compete and non-solicitation provisions; 3) as of the date of the Defendant's breach, which was January 25, 2008, Plaintiffs were and remain free to compete with MEI and solicit Defendant's customers; together which any further relief as this Court deems just and proper in the circumstances.

4.     As to their Fourth Claim for Relief, for an Order requiring Defendants to permit an independent accounting of the Business which reflects the Net Revenue and past billing practices.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as a matter of right.

Dated: New York, New York
       February 13, 2008

                                        HERZFELD & RUBIN, P.C.


                          By:     _____
                                        Homer B. Ramsey (HR9760)
                                        Attorneys for Plaintiffs
                                        40 Wall Street
                                        New York, New York 10005
                                        (212) 471-8500

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MOBILE LIFESTYLES, INC., a Florida corporation,
JOSEPH SANTILLI, an individual, and JONATHAN
SLAGER, an individual,

                          Plaintiffs,

        -against-

MOBILE ENTERTAINMENT, INC., a Delaware
corporation; LAVALIFE, INC. a Delaware corporation,

                          Defendants.

------------------------------------------------------------------X

**ORDER GRANTING PRO
HAC VICE ADMISSION ON
BRYON J. BENEVENTO, ESQ.**

08-cv-01559 (RWS) (DF)

       On motion of Plaintiffs, and the Court being otherwise sufficiently advised,

       IT IS HEREBY ORDERED that leave is granted to Bryon J. Benevento, Esq. of Snell &

Wilmer L.L.C., 15 West South Temple, Suite 1200, Salt Lake City, Utah, 84101, to appear *pro

hac vice* in the above-referenced case, as co-counsel with Herzfeld & Rubin, P.C. for Mobile

Lifestyles, Inc., Joseph Santilli, and Jonathan Slager.


       SO ORDERED this the _____ day of _____, 2008.


                               _____

                               Honorable Robert W. Sweet